**FRANK'S NURSERY SALES, INC., Respondent,**

v.

**CITY OF ROSEVILLE, et al., Appellants.**

**No. 50167.**

Supreme Court of Minnesota.

July 3, 1980.

Peterson, Bell & Converse and Robert C. Bell, St. Paul, for appellants.

Carlson, Fuller & Finney, Stuart L. Finney and Mark E. Fuller, Bloomington, for respondent.

Heard before OTIS, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, Frank's Nursery Sales, Inc. (Frank's), brought this action to compel defendants City of Roseville and its city manager, James Andre, to issue a building permit to allow Frank's to build a store on land it owns in the city. The trial court concluded the city's denial of the permit was arbitrary and capricious and ordered defendants to issue all necessary building permits for the construction of the proposed store. Defendants appeal from that order. We affirm.

Frank's operates retail stores which deal mainly in lawn, garden, and plant supplies but also sell some craft items.[1] In March 1976, Allied Stores, Inc. (Allied), owned property known as LaBelle's Subdivision, located at the intersection of Highway No. 36 and Fairview Avenue in Roseville, Minnesota. Allied and M & M Development Company, (M & M) wished to build a LaBelle's Catalog Showroom on Lot 2 of that subdivision and commenced negotiations with Frank's and the Learning Tree Center to be included in an expanded development. Frank's thereafter acquired Lot 1 of the subdivision.

After determining that rezoning of the subdivision would be necessary before development could begin, representatives of Frank's and the other businesses met with the assistant city manager and other city officials and staff members to discuss the proposed development and application for rezoning. Application was made by Allied and M & M on July 7, 1976, to rezone three lots in the subdivision. They requested that Frank's lot be rezoned from I–1 (industrial) to B–1 (limited business).[2] The permitted

---

1. No more than 16% to 18% of Frank's sales nationwide are craft related; the remaining 82% to 84% of sales relate to lawn and garden and other horticultural products.

2. Section 8.240 of the Roseville City Code lists permitted uses in B–1 limited business zones as medical and dental services, business and professional offices, hospitals, sanitoriums and

uses in a B–1 zone include operation of "lawn and garden" centers.

During late July, Frank's representatives met with city staff members to provide them with information about Frank's operations and facilities. Based on that information, the staff submitted to the planning commission a report that referred to Frank's as a "nursery and garden" store. The report was considered at a planning commission hearing. In addition a representative of Allied at the hearing presented slides that depicted the facilities and operations of LaBelle's, Frank's, and the Learning Tree Center. The commission was supplied with copies of Frank's 1975 annual report, which included a breakdown of sales by product category, and one of Frank's representatives informed the commission of the percentage of sales related to craft items. Also present at the commission hearing, however, were a number of citizens who expressed concern about increased traffic as a result of the proposed development, which is adjacent to a residential area.

The commission recommended denial of the application for rezoning, but Frank's asserts that at no time during the proceedings was it informed that it would not qualify as a lawn and garden center if the rezoning to B–1 were granted.

Despite the action by the commission, applicants made the same presentation to the city council. The council was provided with the same materials and saw the same slides. Again questions were raised about the percentage of crafts sales, and again a number of citizens expressed concern about traffic as a result of the development.

At trial witnesses for Frank's testified that while city officials asked about other than lawn and garden merchandise sold, at no time did anyone suggest that Frank's might not come within the permitted use of the B–1 zone. Frank's witnesses also testi-

fied that at no time was Frank's informed that it would have to limit its sales to products that were strictly lawn and garden related nor did it make promises to that effect. One witness testified that Frank's could not have promised to limit its merchandise because product mix was administered on a company-wide basis and the company would not operate one store in a completely different fashion from its other stores. Finally, each of the witnesses for Frank's, not all of whom were employees, testified that in his opinion Frank's was a lawn and garden center.

Mayor June Demos testified, however, that she had raised doubts at the council hearing that Frank's was truly a lawn and garden center because of its craft sales and "supermarket-like" operation. She testified she asked the city attorney at the meeting whether items not plant related could be sold in a lawn and garden center in a B–1 zone. The city attorney responded that the city had the right to define the term "lawn and garden" center and that Frank's would have to abide by the ordinance when it sought a building permit. Demos further testified she stated at the hearing that she felt only lawn, garden, and indoor horticultural items could be sold at a lawn and garden center and that Frank's representatives stated they would abide by the city's definition.

Other witnesses for the city, residents who had attended the hearing to protest the development, also testified that those in attendance had raised questions about Frank's inclusion within the B–1 (limited business) zone, complaining that Frank's was a high-volume retail store more properly located in a B–2 (retail business) zone.[3] The residents testified the council and Frank's assured them that Frank's would comply with the ordinance.

On September 13, 1976, the council approved the rezoning, with Demos casting

---

rest homes, private clubs or lodges, beauty parlors, greenhouses, and lawn and garden centers. No definition of the uses is given.

**3.** Section 8.300 of the Roseville City Code lists 65 permitted uses in B–2 retail business districts. Among those uses are florist shops, garden supply and feed stores, hobby shops, sporting goods stores, and variety stores.

the only negative vote. The council set four conditions, however: that the development be substantially in accordance with the plans presented to the council; that all rezoned properties be deed-restricted to exclude all uses except those permitted in the B–1 zone; that the applicants (Allied and M & M) contribute $20,000 to the city to help finance a solution to the traffic problem in the area; and that a performance bond be posted to assure that landscaping was completed according to plan. No explicit restrictions were placed on Frank's sales.

On December 13, 1976, the city council, without public notice, amended the section of the ordinance that described the B–1 zone to add a definition of "lawn and garden" center. That definition excluded any establishment that sold products other than lawn, garden, and horticultural products even though the sale of those other products was not the primary business of the establishment. There had been no previous definition of "lawn and garden" center and no other permitted use within B–1 was defined by the amendment.

On January 20, 1978, after the conditions set by the council had been met, Frank's applied for a building permit. The city denied the permit the same day, referring to the language of the B–1 section of the ordinance. Frank's contends that because the property had been deed restricted to B–1 uses, it could not go back to the council to seek approval for a rezoning to B–2. Frank's therefore brought an action to compel issuance of the building permit. The trial court concluded that the December 13, 1976, amendment to the ordinance was invalid for lack of notice and that absent the amendment, Frank's was a "lawn and garden" center within the meaning of the B–1 section of the ordinance.

1. At trial Frank's contended, first, that the words and conduct of the city officials, who had complete information on its business, led Frank's to believe that B–1 zoning would be appropriate. Frank's contended that it relied on that belief to its detriment and that the city should therefore be estopped from denying the permit. The city responded that it had not misrepresented its interpretation of the ordinance but that even if it had, it could not be estopped from applying and enforcing the ordinance correctly. However, although the vast majority of the testimony and argument centered on the estoppel issue, the trial court made no finding on that issue.

■ We conclude Frank's contention that the city was estopped from denying the permit must be rejected as a matter of law. The law in Minnesota is clear that administration of zoning ordinances is a governmental not a proprietary function, and the municipality cannot be estopped from correctly enforcing the ordinance even if the property owner relied to his detriment on prior city action. *W. H. Barber Co. v. City of Minneapolis*, 227 Minn. 77, 34 N.W.2d 710 (1948); *State ex rel. Howard v. Village of Roseville*, 244 Minn. 343, 70 N.W.2d 404 (1955); *The Alexander Co. v. City of Owatonna*, 222 Minn. 312, 24 N.W.2d 244 (1946).

Thus, even if city officials and the city council did lead Frank's to believe that it would come within the B–1 classification, if that representation was incorrect, the city is not estopped from prohibiting Frank's from building a nonconforming business on its lot.

2. The central question, then, is whether the trial court correctly rejected the city's interpretation of the zoning ordinance in holding that Frank's is a lawn and garden center within the B–1 classification. The city concedes on appeal that the December 13, 1976, amendment to the ordinance was invalid for lack of notice and therefore cannot be applied to exclude Frank's from the B–1 zone. The city contends, however, that even the pre-amendment ordinance can be interpreted to exclude a store like Frank's that sells some other than lawn and garden items, and the trial court erred in substituting its own interpretation for that of the city.

We stated in *Arcadia Development Corp. v. City of Bloomington*, 267 Minn. 221, 226, 125 N.W.2d 846, 850 (1964), that "[i]f the reasonableness of the action of the city council is at least doubtful, or fairly debata-

ble, a court will not interject its own conclusions as to more preferable actions." In *Village of Edina v. Joseph*, 264 Minn. 84, 93, 119 N.W.2d 809, 815 (1962), quoted in *Arcadia*, we stated:

> We have repeatedly said with respect to the decisions of municipal and other governmental bodies having the duty of making decisions involving judgment and discretion that it is not the province of the court to substitute its judgment for that of the body making such a decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination.

The city argues that the narrow scope of review expressed in *Arcadia* and *Joseph* required the trial court to defer to the council's reasonable interpretation of "lawn and garden" center under the ordinance. We do not agree.

■ The scope of review by a trial court of a city's interpretation of an ordinance is a question of first impression in this state. The general rule appears to be that while issues of fact and legislative policy-making decisions should be left to the city's determination, subject only to the broad limits of the "arbitrary and capricious" standard, the interpretation of an existing ordinance is a question of law for the court. 3 Rathkopf, *The Law of Zoning and Planning* ch. 65, § 3 (4th ed. 1979) (hereinafter Rathkopf). The opinions of the governmental authority, while entitled to consideration, are not as persuasive as they would be on questions of fact within its purview. Thus, where the question is whether an ordinance is applicable to certain facts, the determination of those facts is for the governmental authority, but the manner of applying the ordinance to the facts is for the court. *Id.* The prior opinions of this court restricting the trial court's review to a determination of whether the city's decision was arbitrary and capricious have been in cases involving the city's fact-finding or policy-making capacity and therefore do not control here. In fact, we noted in *Joseph* that it is for the court to determine whether the governmental body "was not mistaken as to the applicable law," implying that the court has the responsibility to determine the correct interpretation.

3. The issue in this case, then, is whether the trial court correctly interpreted the phrase "lawn and garden" center to include a store such as that which Frank's wishes to build. The facts about the nature of Frank's operations are not in dispute. There is no question that Frank's sells primarily lawn and garden products; the issue is whether a lawn and garden center may also sell other than lawn and garden products. The city claims the language of the ordinance precludes such an interpretation, but the trial court, in finding Frank's to be a lawn and garden center, apparently concluded that the term allowed a store that was not so restricted.

■ We believe the trial court's interpretation should be upheld. Several rules of construction lend support to this interpretation. First, courts generally strive to construe a term according to its plain and ordinary meaning. *Cf. Charles W. Sexton Co. v. Hatfield*, 263 Minn. 187, 116 N.W.2d 574 (1962). 3 Anderson, *American Law of Zoning* § 16.10 (2d ed. 1977) (hereinafter Anderson); 1 Rathkopf § 9.03. The term "lawn and garden" center itself does not seem to exclude stores that primarily sell horticultural items but sell some other items as well. Moreover, Frank's witnesses, familiar with retail merchandising terms, testified they would consider Frank's a lawn and garden center.

■ Second, zoning ordinances should be construed strictly against the city and in favor of the property owner. 3 Anderson § 16.02; 1 Rathkopf § 9.03. Clearly, the term "lawn and garden" center is susceptible of various interpretations that are more or less restrictive in scope. We must give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property

owner to use his land as he wishes. The trial court's conclusion that Frank's is a lawn and garden center does not distort the statute and gives proper effect to this principle.

■ A zoning ordinance must always be considered in light of its underlying policy, *Lowry v. City of Mankato*, 231 Minn. 108, 42 N.W.2d 553 (1950), but in this case an examination of legislative intent does not dictate a contrary result. The city contends Frank's resembles more an ordinary retail outlet, which is not permitted in B–1 but is permitted, instead, in B–2. It is argued, although not a part of the record, that B–1 zones are designed to act as buffers between residential areas and full-scale commercial areas. The city notes that the permitted uses in a B–1 zone are not large-volume retail uses, whereas permitted B–2 uses include establishments that sell many items sold by Frank's. The city contends, therefore, that it was reasonable to conclude that Frank's would more properly be located in a B–2 retail zone and is not within the spirit of the B–1 section.

While it is probably true that large retail stores were meant to be confined generally to B–2 zones, nothing in the B–1 section excludes large retail lawn and garden centers. It is Frank's size and operating style, the "supermarket" approach complained of by the council and residents, not the limited presence of other than lawn and garden items, that is the actual concern of the city. Thus, it does not contravene the intent of the ordinance to include within the phrase "lawn and garden" center a store like Frank's.

Certainly, the administrative interpretation of the ordinance is entitled to respect, but that interpretation is not persuasive, particularly here. The court could have found that even the council agreed with its interpretation of "lawn and garden" center until continuing community pressure compelled the council to attempt to redefine the term. The council's attempt to add a definition of the term to the ordinance also suggests that it felt the ordinance, absent the amendment, was not so restrictive.

While these circumstances are not dispositive, they justify giving less weight to the city's present interpretation than might otherwise be accorded.

■ We hold, therefore, that the trial court correctly concluded Frank's is a lawn and garden center within the B–1 section of the zoning ordinance and affirm the order compelling the city to issue all necessary building permits.

Affirmed.