PRIOR LAKE AGGREGATES, INC., et al., petitioners, Appellants,

v.

CITY OF SAVAGE, et al., Respondents.

No. C7–83–1368.

Court of Appeals of Minnesota.

May 15, 1984.

Gregory L. Rothnem, Edina, for appellants.

Phillip R. Krass, Shakopee, for respondents.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

Prior Lake Aggregates, Inc., and Northwest Asphalt, Inc., appeal from a judgment of the trial court discharging an alternate

writ of mandamus and denying their request for a declaratory judgment and a permanent injunction. The court found that the City of Savage had properly interpreted its zoning ordinance when it denied Prior Lake's and Northwest's application for a special use permit for the erection of an asphalt plant. The trial court also rejected appellants' argument that the City was estopped from denying the permit because it had previously issued such a permit for an asphalt plant operation on the same property for a limited period of time. On appeal Prior Lake and Northwest argue that (1) the denial of the special use permit was arbitrary and unreasonable, (2) the proposed asphalt plant is a permitted accessory use, (3) the proposed plant is a permissible change of a nonconforming use, (4) the Council is estopped from denying the permit, and (5) the Council violated the equal protection clause in denying the permit. We affirm.

## FACTS

Prior Lake Aggregates is a commercial operation that mines sand and gravel and prepares them for use as a road base material by crushing, sorting and washing. It is located within the city limits of Savage on property zoned rural. The Savage zoning ordinance does not include these activities as permitted uses in a rural zone, but it does allow mining, excavation and land reclamation under a special use permit. However, Prior Lake Aggregates operates without a permit as a nonconforming use because its operation predates the enactment of the Savage zoning ordinance.

Northwest Asphalt is a business engaged in the manufacture and application of asphalt. Prior Lake Aggregates and Northwest Asphalt orally agreed that Northwest would operate an asphalt plant in Prior Lake's sand and gravel pit. In return Northwest would purchase gravel from Prior Lake. The agreement was contingent upon obtaining a special use permit from the city of Savage. Prior Lake and Northwest jointly applied for the permit.

The Savage Planning Commission held two public meetings and voted to recommend denial of the special use permit because "the proposal adversely affects the character of the area and because approval may be deemed spot industrial zoning." At a hearing the City Council considered the application for the special use permit and then voted unanimously to deny it. The reasons for denial were recorded in the minutes of the council meeting. Among the reasons for denial were that the proposal does not conform with the land use of a rural area, and the proposal was not similar in nature to the permitted uses of a rurally zoned area. The Council, by motion, directed the city staff to prepare a resolution formally setting forth the reasons for denial of the permit.

At its next regular meeting the Council voted to adopt the resolution which cited eight reasons for denying the application. The reasons listed were primarily conclusory and drawn from the language of the zoning ordinance itself. The resolution did specifically include as a reason that the application was for a special use which was not similar in nature to the special uses allowed in an R–Rural Zone.

## ISSUES

1. Does the Savage zoning ordinance permit the construction of an asphalt plant in a rural zone under a special use permit, as a customary accessory use, or as a permissible change in a nonconforming use?

2. Is the City Council estopped from denying the permit because it previously granted a special use permit for a temporary asphalt plant on the same property?

3. Did the City Council's denial of the application for a special use permit constitute a violation of equal protection?

## ANALYSIS

I

■ 1. Prior Lake and Northwest maintain that the denial of the special use permit for the asphalt plant was arbitrary and unreasonable because they were entitled to

its issuance under the language of the Savage zoning ordinance. A special use provision permits property to be used in a manner expressly authorized by an ordinance but allows the governing body discretion in determining whether to issue it. *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712 (Minn.1978).

■ "[W]here a municipality acts in its factfinding or legislative policymaking capacity under its delegated powers the scope of review is very narrow, 'subject only to the broad limits of the "arbitrary and capricious" standard \* \* \*.'" *Amcon Corporation and O–J Sporting Goods Co. v. City of Eagan*, 348 N.W.2d 66, 72 (Minn.1984) (quoting *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980)). But, the interpretation of an ordinance is a question of law for the court. *Id.* at 72.

The essential facts about the nature of the operation of an asphalt plant are not in dispute. The Council's determination did not turn on a factual issue but on the application of the language of the zoning ordinance to the facts. In finding that the operation of the asphalt plant was not similar in nature to the permitted uses of a rurally zoned area, the Council was interpreting its zoning ordinance. On appeal, the central issue is whether the interpretation is correct.

■ In interpreting the Savage zoning ordinance we adhere to several rules of construction. First, we construe a term according to its plain and ordinary meaning. *Frank's Nursery*, 295 N.W.2d at 608. Second, we "generally construe strictly against the city and in favor of the property owner." *Amcon*, at 72. Finally, we consider the ordinance in light of its underlying policy. *Frank's Nursery*, 295 N.W.2d at 609 (citing *Lowry v. City of Mankato*, 231 Minn. 108, 42 N.W.2d 553 (1950)).

Section 3.1.1.3(g) of the Savage zoning ordinance provides for special use permits for "[o]ther uses similar in nature to the above uses and which, in the opinion of the Village Council, will not be detrimental to the integrity of the Rural District." Mining, excavation and land reclamation are included in the "above uses" permitted only by special use permit. Section 3.1.1.3(e).

■ Prior Lake and Northwest argue that Section 3.1.1.3(e) encompasses more than the extraction of gravel from the land. "[It] includes processing, producing and storing the materials that are excavated." Prior Lake and Northwest then conclude that their proposed facility is similar in nature to one which would be allowed under Section 3.1.1.3(e) and thus they are entitled to a special use permit in the R–Rural District. Prior Lake and Northwest assume too much. They readily admit that processing and producing includes crushing, sorting and washing. Construing the terms "mining", "excavation" and "land reclamation" according to their plain and ordinary meaning and construing them strictly against the city, we cannot find that they include the processing and production of road base materials. We cannot read the separate steps of production into the terms "mining", "excavation" and "land reclamation." Further, in light of the ordinance's express intent of providing a smooth transition from rural to urban development, Section 3.1.1.1, appellants' argument is unpersuasive. Accordingly we cannot find that asphalt production is similar in nature to a use which would be allowed to operate in a rural zone with a special use permit under the Savage zoning ordinance. The Council's interpretation of its ordinance should be upheld.

■ 2. Prior Lake and Northwest advance an alternative provision of Section 3 of the ordinance as authorizing the proposed plant. They contend that an asphalt plant is a customary accessory use incidental to the principal use permitted on the property. Principal uses include farmsteads, crop storage facilities, barns, greenhouses, parks and schools. Section 3.1.1.2. Section 3.1.1.2(h) provides that "[c]ustomary accessory uses incidental to the foregoing principal uses such as private garages, screen houses, signs and play equip-

ment" are permitted uses within a rural zone. Neither mining nor the production of asphalt is listed among the "foregoing principal uses." This argument ignores the plain and ordinary meaning of the ordinance.

Prior Lake and Northwest also contend that "logically and legally" accessory uses should be allowed for those uses operating under special use permits. Therefore, they contend that asphalt production should be allowed as an accessory use to the processing and storage of road base materials.

This argument is flawed in three respects. First, it ignores the plain and ordinary reading of the special use permit section of the ordinance which does not specifically allow for accessory uses. Second, it ignores the fact that Prior Lake is not operating under a special use permit. Rather, it is permitted to operate as a nonconforming use because it existed prior to the enactment of the Savage zoning ordinance. Third, the argument is premised on the assumption that it would be entitled to a special use permit. This is an erroneous assumption. As we have previously determined, there is no provision in the Savage zoning ordinance which allows the City Council to grant a special use permit for an asphalt plant in a rural zone.

3. Finally, Prior Lake and Northwest contend that the addition of an asphalt plant to the sand and gravel site is allowable as a permissible change of a nonconforming use under the ordinance. They maintain that the proposed plant should be considered under the sections of the ordinance providing for nonconforming uses of land rather than under the sections of the ordinance providing for nonconforming structures. We conclude that under either section of the ordinance the addition of an asphalt plant would constitute a violation of the ordinance.

Section 2.4.1.2 provides that a nonconforming "building or structure shall not be added to or enlarged in any manner unless such additions * * * are made so to bring said building or structure into conformity with * * * this ordinance." "[C]onstruc-

tion of a building where none existed before constitutes an expansion of a nonconforming use in the same manner as an addition to an existing building." *County of Freeborn v. Claussen*, 295 Minn. 96, 100, 203 N.W.2d 323, 326 (1972). Similarly, the addition to, or the placement of, a structure where none existed before constitutes an expansion of a nonconforming use clearly in violation of the ordinance.

Prior Lake and Northwest assert that the proposed plant is not a structure but rather is mobile equipment and consequently section 2.4.1.2 is inapplicable. The substitution of a 10-foot by 50-foot mobile trailer for a 10-foot by 18-foot trailer was considered a "structural enlargement" in *White Bear Docking and Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174 (Minn.1982). Similarly, this plant approximately 50 feet high and covering approximately one acre is a structure under the Savage zoning ordinance.

■ Even if this plant were merely mobile equipment, appellants' nonconforming theory is erroneous. Appellants suggest that their current operation is a nonconforming use of a *parcel of land* which may be *changed* to a similar nonconforming use, i.e. the addition of an asphalt plant. Section 2.4.2.4. We disagree. There is no dispute about the nature of the proposed asphalt operation. To make asphalt, oil must be trucked into the site. This addition constitutes an expansion of the use rather than a *change* of the use. This is not permitted under Section 2.4.2.4. This interpretation is supported by the holding in *Hawkins v. Talbot*, 248 Minn. 549, 553–54, 80 N.W.2d 863, 866–67 (1957), where the court found that the employment of more efficient equipment did not extend an existing use because it was merely an improvement over the previous method and because it did not result in a change or addition in the nature and purpose of the original use. Prior Lake and Northwest would not merely improve a previous method of operation by adding an asphalt plant. Rather, the addition of the asphalt plant would constitute an extension of an existing use which is not permitted under the Savage zoning ordinance.

## II

In addition to their contentions under the ordinance, Prior Lake and Northwest claim that the City Council is estopped from denying the application for a special use permit because Prior Lake and Northwest relied on discussions with council members and on the City Council's issuance of a temporary permit to Buffalo Bituminous for the operation of an asphalt plant for a specific job in the summer of 1981.

Northwest placed its bid for the plant two weeks before it applied for the special use permit and before it talked to council members. Thus, it cannot claim that it relied on discussions with council members.

The City Council had previously issued a temporary special use permit to Buffalo Bituminous for a portable asphalt unit. The Savage City Council is not estopped from correctly enforcing the ordinance even if Prior Lake and Northwest relied to their detriment on a prior action of the city council. "A municipality cannot be estopped from correctly enforcing the ordinance even if the property owner relied to his detriment on prior city action." *Frank's Nursery,* 295 N.W.2d at 607.

## III

Prior Lake and Northwest also argue that the city discriminated against them because the City Council had never denied any application for a special use permit in a rural zone and because it granted a temporary special use permit to Buffalo Bituminous for operation of a portable asphalt unit in the previous summer.

Zoning ordinances must operate uniformly; thus, the unequal treatment of similarly situated parties is prohibited. *Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 869 (Minn.1979). There is no evidence which indicates that those who have been granted special use permits in a rural zone are parties which are situated similarly to Prior Lake and Northwest; therefore there are no grounds upon which to find unequal treatment. Likewise, Buffalo Bituminous and North-west Asphalt are not similarly situated because Buffalo Bituminous applied only for a temporary permit for a portable plant. Northwest is applying for a permanent facility. Finally, the Savage City Council may not be bound by a prior erroneous application of its zoning ordinance. *Frank's Nursery,* 295 N.W.2d at 607.

## DECISION

The Savage City Council's denial of a special use permit was properly based on its determination that the zoning ordinance does not permit the operation of an asphalt plant in a rural zone. The Council was not estopped from denying a permit to Prior Lake Aggregates and Northwest Asphalt because a municipality may correct a prior erroneous interpretation of an ordinance. Finally, the city did not deny appellants equal protection of the law simply because it granted a special use permit one year earlier to another company for operation of a portable asphalt plant.

Affirmed.