CLEAR CHANNEL OUTDOOR AD-VERTISING, INC., f/k/a Eller Media Company, a Delaware corporation, Appellant,

v.

CITY OF ST. PAUL, Respondent.

No. A03–1013.

Court of Appeals of Minnesota.

March 2, 2004.

Marvin A. Liszt, David K. Nightingale, Bernick and Lifson, P.A., Minneapolis, MN, for appellant.

Manuel Cervantes, St. Paul City Attorney, Eric D. Larson, Assistant City Attorney, St. Paul, MN, for respondent.

John H. Herman, Michael A. Ponto, Craig S. Coleman, Faegre & Benson, LLP, Minneapolis, MN, for Amici Curiae St. Paul Area Chamber of Commerce and Minnesota Automobile Dealers Association.

Considered and decided by KLAPHAKE, Presiding Judge, RANDALL, Judge, and HARTEN, Judge.

**OPINION**

KLAPHAKE, Judge.

Appellant Clear Channel Outdoor Advertising, Inc. (Clear Channel) brought a declaratory judgment action challenging respondent City of St. Paul's (the city) denial of an application for building permits to effect repairs to three billboards. The district court granted summary judgment in favor of the city and denied Clear Channel's motion for summary judgment, but permitted Clear Channel to amend its complaint to include a regulatory takings cause of action. The district court denied the city's second motion for summary judgment and certified the following question as important and doubtful:

> Where damage to a billboard in legal non-conforming use is less than 51% of the aggregate replacement cost of the sign and sign structure, did the City of St. Paul act lawfully in denying permits to Clear Channel for repairs to its sign by applying a standard that prohibits repair where the damage exceeds 51% of the replacement cost of the sign face[?]

Because we conclude that the city acted arbitrarily and unreasonably by inconsis-

tently interpreting its ordinances, we answer the certified question in the negative. We therefore reverse the district court's order denying Clear Channel's motion for summary judgment and remand for entry of summary judgment in favor of Clear Channel in the declaratory judgment action.

## FACTS

Clear Channel owns several outdoor advertising signs in the city, including the three signs at issue here. All three signs are in commercially zoned areas in the city and are legal nonconforming signs due to height, size, or location.

On May 30, 1998, a severe windstorm swept through the city, damaging these three signs and others owned by Clear Channel. Specifically, the three signs lost all or nearly all of the area known as the display surface, the portion of the sign structure to which the advertising material is fastened, as well as the actual advertising material fastened to the display surface. All three signs are roof signs and have a metallic, tower-like structure to which the display surface is fastened. The supporting structures sustained very little damage. The display surfaces, considered alone, were nearly 100% destroyed. The cost or value of repairing them represented between 14% and 22% of the replacement cost of the entire sign structure, including display surface and support structure.

Shortly after the storm, Clear Channel submitted applications to repair two other signs damaged in the same storm; these applications were granted. In granting both applications, the city's planning commission noted that the display surfaces were only one component of the larger structure and that repairs could be made because the damage was less than 51% of the replacement cost of the entire struc-

ture. Further, the planning commission stated that historically these repairs were allowed without a sign permit. The planning commission's decision was affirmed by the city council.

A citizen's group, Scenic Minnesota, thereafter sued the city over the decision to permit repair of these two signs. In that court action, the district court decided that Clear Channel had properly followed relevant ordinances by applying for a building permit in order to make repairs to a nonconforming legal sign.

On June 22, 2000, Clear Channel applied for building permits to repair the three signs at issue here, following the procedure set forth by the earlier district court opinion. On October 17, the zoning department denied Clear Channel's application for building permits, concluding that because more than 51% of each of the signs was destroyed, these nonconforming signs could not be repaired under the applicable ordinances. The zoning administrator interpreted the language of the applicable city ordinances to prohibit repair of a legal nonconforming sign if either the sign or the sign structure sustained more than 51% damage. St. Paul, Minn., Legislative Code § 66.301(2) (1956 & Aug. 13, 2003). The zoning administrator concluded that when the ordinances referred to "sign," it encompassed the term "sign face." The term "sign face" is not defined in the ordinances, and it is unclear whether the zoning administrator considered the "sign face" to be the display surface or the actual advertising material.

Clear Channel sought review of the zoning administrator's denial of its application for building permits. The planning commission denied the appeal on January 26, 2001, stating that the zoning administrator had correctly interpreted the ordinances as requiring "a two-hurdle test for signs and sign structures. If either is more

than 51 percent damaged, the repairs or modifications or renovation must meet all the other regulations in the sign chapter of the code."

Clear Channel thereafter sought review before the city council of the planning commission's decision. By resolution of March 14, 2001, the city council affirmed the planning commission's decision applying the 51% test to either sign or sign structure. On June 22, Clear Channel brought this declaratory judgment action, alleging that the city's denial of its permit applications was unreasonable, arbitrary, capricious, and contrary to law.

On February 4, 2002, the district court granted the city's summary judgment motion and denied Clear Channel's motion for summary judgment in the declaratory judgment action. On February 12, the district court permitted Clear Channel to amend its complaint, adding a regulatory takings cause of action.

On January 13, 2003, the district court denied the city's second motion for summary judgment. On February 14, the court denied Clear Channel's motion for reconsideration of the February 4, 2002 order. On June 10, 2003, the district court certified the question to this court as important and doubtful.

## CERTIFIED QUESTION

Where damage to a billboard in legal nonconforming use is less than 51% of the aggregate replacement cost of the sign and sign structure, did the city act lawfully in denying permits to Clear Channel for repairs to its signs by applying a standard that prohibits repair where the damage exceeds 51% of the replacement cost of the sign face?

## ANALYSIS

### 1. Standard of Review

■■■ "Interpretations of state statutes and existing local zoning ordinances are questions of law that this court reviews de novo." *Buss v. Johnson,* 624 N.W.2d 781, 784 (Minn.App.2001). Zoning decisions of a municipal body that require judgment and discretion are reviewed to determine whether the municipal body acted arbitrarily, capriciously, or unreasonably, and whether the evidence reasonably supports the decision made. *See Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980). An action is reasonable, or not arbitrary, when it bears a reasonable relationship to the purpose of the ordinances. *See Arcadia Dev. Corp. v. City of Bloomington,* 267 Minn. 221, 227, 125 N.W.2d 846, 851 (1964). Despite a municipality's broad discretionary power, however, the reviewing court may reverse the municipality's decision if its reasons are "legally insufficient or if the decision is without factual basis." *Amoco Oil Co. v. City of Minneapolis,* 395 N.W.2d 115, 117 (Minn.App.1986).

### 2. Interpretation of Ordinances

■■■ "A zoning ordinance should be construed (1) according to the plain and ordinary meaning of its terms, (2) in favor of the property owner, and (3) in light of the ordinance's underlying policy goals." *SuperAmerica Group, Inc. v. City of Little Canada,* 539 N.W.2d 264, 266 (Minn.App. 1995), *review denied* (Minn. Jan. 5, 1996). Policy goals of the city's sign ordinances include "reduc[ing] the number of nonconforming signs in the city, particularly billboards" and ensuring that "nonconforming signs shall not be enlarged upon, expanded or extended[.]" Legis. Code §§ 66.101(8), .301. The ordinances also state:

It is further the intent of this chapter to permit legal nonconforming signs existing on the effective date of this chapter ... to continue as legal nonconforming

signs provided such signs are safe, are maintained so as not to be unsightly, and have not been abandoned or removed[.]

Legis. Code § 66.301. In short, the underlying goals of the ordinances are to protect current nonconforming signs, while gradually phasing them out of existence.

■ The city's decision to deny Clear Channel building permits for repairs is based on its interpretation of Legis. Code § 66.301(2), which states: "Should [a legal nonconforming] sign or sign structure be destroyed by any means to an extent greater than fifty-one (51) percent of its replacement cost, it shall not be reconstructed except [as a conforming use]." The ordinances define "sign" as "[t]he use of words, numerals, figures, devices, designs or trademarks the purpose of which is to show or advertise a person, firm, profession, business, product or message." Legis. Code § 66.121. "Sign structure" is defined as "[a]ny structure which supports or is capable of supporting any sign as defined in this chapter. A sign structure may be a single pole; it may not be an integral part of a building." *Id.* Because there are two separate definitions, the city interprets this to create a two-hurdle step that must be overcome before a building permit for repairs can be issued. That is, the city maintains that if either the sign or the sign structure sustains damage greater than 51% of its replacement cost, the entire nonconforming use may not be reconstructed.

The flaw in the city's analysis is its loose use of its own term, "sign." According to the plain language of the ordinances, "sign" refers only to the printed matter affixed to the sign structure. "Sign face," the term used by the zoning administrator, is not defined, but "display surface" is, as the "area made available by the sign structure for the purpose of displaying the advertising message." Legis. Code § 66.106. Interpreting the plain language of the ordinances, as we must, the phrase "display surface" refers to the flat surface that Clear Channel sought to replace and is clearly considered part of the sign structure. Although it is not clear from the record, the zoning administrator seems to refer to the display surface as the "sign face."

At oral argument, the city asserted that the destruction of the sign, or the printed matter, prohibits the reconstruction of both the sign and sign structure. If this interpretation is correct, each time printed matter is replaced, it could be considered destroyed "by any means," thus ending the entire nonconforming use. This is an absurd result that contradicts the purposes of both the city's sign ordinances and the law on nonconforming uses, which seeks to balance the gradual elimination of nonconforming uses with the legitimate rights of property owners. *See Buss,* 624 N.W.2d at 786. This position is also in apparent direct conflict with exemptions contained in the city's sign ordinances, which allow poster replacements without the need for a permit. Legis. Code § 66.405(1).

■ The city asserts that even if its interpretation has changed, a municipality cannot be estopped from correctly enforcing its ordinances, despite a property owner's reliance on previous city action, and that a municipality's interpretation of its own ordinances is entitled to some deference. *See Frank's Nursery Sales,* 295 N.W.2d at 609. Further, the city reminds us that our scope of review is narrow and that we must affirm the city's actions if those actions are at least doubtful or fairly debatable. *Id.* at 607–08. The city's interpretation of its ordinances, however, appears to be a moving target, much like the city of Roseville's interpretation in *Frank's Nursery Sales.*

In that case, Roseville added a restrictive definition of "lawn and garden center" to its ordinance in order to defeat Frank's Nursery's application for a building permit. *Id.* at 606. In finding Roseville's action to be arbitrary and capricious, the supreme court first construed the term "lawn and garden center" according to its plain and ordinary meaning and then construed the zoning ordinance strictly against Roseville and in favor of the property owner. *Id* at 608. While acknowledging the general deference given to a municipal interpretation, the supreme court noted that the new definition of "lawn and garden center" did not arise "until continuing community pressure compelled the council to attempt to redefine the term.... While these circumstances are not dispositive, they justify giving less weight to the city's present interpretation than might otherwise be accorded." *Id.* at 609.

Similarly, here, the city's recent creation of a two-hurdle test defies the plain language of the ordinances, ignores the property rights of Clear Channel, and appears to arise from community pressure. We therefore decline to accept the city's interpretation of its ordinances, and construe them strictly against the city.

## DECISION

The city's denial of Clear Channel's application for building permits to repair legal nonconforming advertising signs is arbitrary and not reasonably related to the language or purposes of its ordinances. We therefore answer the certified question in the negative; reverse the district court's order of February 4, 2002, which granted summary judgment to the city and denied it to Clear Channel; and remand this matter to the district court for further proceedings consistent with this opinion.

**Certified question answered in the negative; reversed and remanded.**