*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2176**

In re Application of
EOF Investments, LLC

**Filed August 10, 2015
Affirmed in part, reversed in part, and remanded
Worke, Judge**

Lake Minnetonka Conservation District

Timothy J. Keane, Todd J. Guerrero, Kutak Rock LLP, Minneapolis, Minnesota (for relators Matt Johnson, Susanne Johnson, David Feldshon, Archelle Georgiou, Rodney Burwell, Barbara Burwell, Nivin MacMillian)

Michael C. Couri, Couri & Ruppe, P.L.L.P., St. Michael, Minnesota (for respondent EOF Investments, LLC)

George C. Hoff, Justin Templin, Hoff, Barry & Kozar, P.A., Eden Prairie, Minnesota (for respondent Lake Minnetonka Conservation District)

Considered and decided by Cleary, Chief Judge; Hudson, Judge; and Worke, Judge.

## U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Relators challenge the grant of a multiple-dock license and a variance to a marina by the Lake Minnetonka Conservation District. We affirm in part, reverse in part, and remand for further proceedings.

# DECISION

Relators here are property owners who live on Tanager Lake, a bay of Lake Minnetonka. They challenge respondent Lake Minnetonka Conservation District's (LMCD) grant of a multiple-dock license and a variance to respondent EOF Investments, LLC (EOF). EOF operates a commercial marina on Tanager Lake.

Grants of licenses and variances are quasi-judicial determinations. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn. 1981). This court reviews the decisions of a quasi-judicial body, such as LMCD, using the substantial-evidence test. *Watab Twp. Citizen All. v. Benton Cty. Bd. of Comm'rs*, 728 N.W.2d 82, 93 (Minn. App. 2007), *review denied* (Minn. May 15, 2007). The body's decisions must be legally sufficient and have substantial factual support in the record. *Id.* at 93-94. Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 464 (Minn. 2002).

*Code*

Relators first contend that LMCD erred in issuing a license under section 2.015 of its Code of Ordinances (Code), because one of the necessary elements for that section to apply was not fulfilled. Section 2.015, subdivision 3(d), provides that a license "shall not" be issued if it would "resul[t] in any further extension into non-conforming side setback areas than the existing dock." Relators contend that the variance granted by LMCD to EOF allows further extension of the dock. Relators claim that the variance

2

permits three dock slips to extend over the property line, whereas previously only one dock slip did so.

We do not agree that LMCD violated its Code. LMCD's order granting the variance states that it is granting nothing more than what was allowed under a preexisting variance, granted in 1985: "The extension over the zoning line of north opening slips on the north dock structure is the same as the extension allowed by the 1985 Order." Relators have provided diagrams which suggest that the site plan approved by LMCD differs from the site plan approved in 1985, but its assertions are unverifiable on the record before us. First, the 1985 site plan includes a notation that it is "not to scale" as well as a notation that the "dock slip dimensions [were] added . . . as measured in [1990]," so its accuracy cannot be relied upon for comparison purposes. Second, the 1985 diagram (even if it is an accurate depiction of what was permitted in 1985) indicates that the furthest-extending dock reaches four feet over the property line. LMCD's recently-granted variance also limits the furthest-extending dock slips to four feet beyond the property line. Third, the number of dock slips permitted by the 1985 order to extend over the property line is not specified—the order simply states that a variance is granted for "the setback to the north, including an extension beyond the lot line extended [for] the slips opening toward the lot line." The text includes no limitation on the number of slips which may extend beyond the property line; that only one slip extends beyond the line in the "not to scale" diagram cannot overcome this language. In sum, evidence in the record supports LMCD's finding that there is no difference between the variance granted in

3

1985 and the variance granted here. If the variances granted are identical, there is no "further extension" of the docks that would render use of section 2.015 inappropriate.

In the alternative, relators assert that section 2.015 cannot apply at all to LMCD's grant of a license and variance because, by its language, section 2.015 only applies to docks "lawfully in existence," and EOF's dock is illegal.

We do not agree that the dock is illegal. The record shows that at least one of EOF's docks was not in compliance with the variance granted in 1985. But under the Code, an activity is "unlawful" if the actor is "without a currently valid license." LMCD Code of Ordinances (LCO) § 1.06, subd. 2 (2015). EOF was issued licenses every year since 1985, including 2013 and 2014[1], the time period during which this dispute arose and was contested. It is true that the licenses granted to EOF over the years were conditioned upon compliance with the variance granted in 1985, but lack of compliance with a condition of a license, such as a variance, is merely "grounds for revocation of [a] license," LCO § 1.06, subd. 9 (2015), and EOF's license was never revoked.

*Procedural due process*

Relators next argue that their procedural due process rights were violated by the manner in which LMCD approved EOF's requests for a multiple-dock license and a variance. Whether the government has violated due process rights is reviewed de novo. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). Procedural due process

---

[1] The 2014 license was granted to EOF on October 8, 2014, so there was a period of time during which EOF's license application was pending that it did not have an in-force license. However, under the Code, "[a]ll licenses shall be for a term of one calendar year," LCO § 1.06, subd. 6 (2015), and the license issued to EOF expired on December 31, 2014. Nothing in the Code prohibits retroactive issuance of a license.

4

requires, at minimum, (1) notice and (2) a meaningful opportunity to be heard before a party's rights are infringed. *Id.* These basic requirements persist in the land-use context, but "quasi-judicial proceedings do not invoke the full panoply of procedures required in regular judicial proceedings." *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712, 716 (Minn. 1978). In the quasi-judicial context, "the opportunity to present information and argument to rebut opposing statements" is an indication that sufficient due process protection was provided. *Id.*

Relators contend that LMCD violated its Code because it did not hold a full public hearing before it issued EOF the license and variance. Relators claim that this violation means that they did not have an adequate opportunity to be heard. But following EOF's applications for a multiple-dock license and a variance, LMCD held a full public hearing on August 27, 2014. Relators argue that because the site plan attached to EOF's applications was amended after the August 27 hearing, another full hearing was required before approval. Relators note that, following amendments to the site plan, EOF's applications were processed using portions of the Code that govern reconfiguration of non-conforming structures. Relators point to language stating that "[a]n application for reconfiguration of a non-conforming structure" "shall [require] a public hearing on the application." LCO § 2.015, subd. 4(a)-(b) (2015). But EOF did not apply for reconfiguration of a non-conforming structure; it applied for a multiple-dock license and a variance. Thus, the governing portions of the Code are sections 1.07, subdivision 6 (governing hearings for variances), and 1.06, subdivision 3 (governing application for and issuance of licenses). These portions of the Code were not violated.

5

We are further satisfied that relators had sufficient notice and opportunity to be heard. *See Sawh*, 823 N.W.2d at 632  Though a public hearing was not required under the Code, LMCD notified relators two days ahead of the meeting at which issuance of the license and variance was to be determined.  Relators' attorney conferenced with LMCD staff two days prior to the meeting.  At the meeting, LMCD heard public comment, and relators' attorney raised concerns, objections, and submitted a letter on behalf of his clients.

Relators also contend that a full hearing was required because the site plan as amended after the August 27 hearing could have a greater adverse impact than the site plan that was considered on August 27.  Relators' primary concern is that the amended site plan permits a greater number of jet skis.  First, relators cite no legal authority to support their contention that a greater relative adverse impact requires a hearing.  Second, relators concede that according to the portions of the Code under which EOF's applications were granted, the Code contains "no meaningful restrictions" on jet skis.  It is unclear what the hearing requested by relators would accomplish.  Third, concerns regarding jet skis, and their potential for noise, wake, and lake-bottom erosion, were brought up at the August 27 hearing.  Relators do not contend that LMCD was unaware of their concerns regarding jet skis in the context of EOF's applications.

We conclude that relators' due process rights were not violated by the manner in which LMCD granted EOF's applications.

6

### Legal standard for variance

Finally, relators argue that LMCD applied the wrong legal standard in granting the variance to EOF. The standard governing the grant of the variance comes from the Code, which is equivalent to an ordinance. *See* Minn. Stat. § 103B.641, subd. 1 (2014) (stating that LMCD's rules and regulations have the effect of an ordinance). "Interpretations of . . . ordinances are questions of law that this court reviews de novo." *Clear Channel Outdoor Advert., Inc. v. City of St. Paul*, 675 N.W.2d 343, 346 (Minn. App. 2004), *review denied* (Minn. May 18, 2004). Because we are unable to determine the legal sufficiency of LMCD's choice of standard in granting the variance, we reverse the grant of the variance and remand for further proceedings.

The difficulty stems from the Code itself, which according to its text describes three standards for granting a variance. Section 1.07 of the Code governs variances. Subdivision 1 of this section, entitled "General Statement," states that "[w]here *practical difficulties* or *particular hardships* occur . . . , [LMCD] may permit a variance from the requirements of this Code." (Emphasis added.) Subdivision 6, however, entitled "Hearings," provides that LMCD "may grant a variance from the literal provisions of this Code in instances where their strict enforcement would cause *undue hardship* because of circumstances unique to the individual property." (Emphasis added.) These standards are distinct from one another. *See Krummenacher v. City of Minnetonka*, 783 N.W.2d 721, 729-30 (Minn. 2010) (discussing the distinctions between the "practical difficulties," "particular hardship," and "undue hardship" standards in the context of granting a variance). None of the terms emphasized above are defined in the Code. *See* LCO § 1.02

7

(2015).  Unsurprisingly, relators contend that the "undue hardship" standard applies, while LMCD contends that the "practical difficulties" standard applies.

In LMCD's order granting EOF the variance and multiple-dock license, the language used is unclear.  It states that "[LMCD] finds that there is *a hardship . . .* within the meaning of LMCD Code Section 1.07 and that granting the variance amendment as requested is consistent with the spirit and intent of the Code."  (Emphasis added.)  It does not say "*particular* hardship" or "*undue* hardship," nor does it reference a specific subdivision of section 1.07.

LMCD is not permitted to choose whichever standard it wishes when considering a particular application for a variance, because such "flexibility"—as LMCD expresses the matter in its brief[2]—would be arbitrary.  *See Rodne v. Comm'r of Human Servs.*, 547 N.W.2d 440, 444-45 (Minn. App. 1996) (stating that the determinations of quasi-judicial bodies are reviewed for arbitrary action).

We must examine the Code to determine which standard is appropriate to use in this case.  *See State v. Irby*, 848 N.W.2d 515, 518 (Minn. 2014) ("[w]e begin with the text").  Our supreme court has provided guidance for situations where, as here, provisions seem to conflict.

> If a general provision in a [code] conflicts with a special
> provision in the same . . . [code], we interpret the two
> provisions, if possible, in a manner that gives effect to both

---

[2] EOF's brief similarly states that "LMCD does not have to apply the hardship standard" and that LMCD has "the freedom" to choose among the standards.  The argument apparently is that LMCD can simply list every standard in its Code and then choose whichever standard it wishes to apply to each variance application.  This is a recipe for favoritism and for arbitrary and capricious decision-making.

> provisions. But if the conflict between two [codes] is irreconcilable, the special provision prevails and will be interpreted as an exception to the general provision, unless the general provision was enacted at a later session and it is the manifest intent of the [enacting authority] that the general provision prevail.

*Nielsen v. 2003 Honda Accord*, 845 N.W.2d 754, 756 (Minn. 2013).

Here, there is no way to reconcile these distinct standards, and we must interpret the Code according to the specific provision articulated in subdivision 6. Viewed in light of section 1.07 as a whole, subdivision 1 is a general statement of purpose while subdivision 6 lays out specific procedures which are to be followed in granting a variance.

EOF argues that if an ordinance is ambiguous it must be interpreted in favor of the landowner and against the local government, citing *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604 (Minn. 1980). This case is inapposite. Frank's Nursery Sales was denied a building permit, but argued that it qualified as a "lawn and garden" center as defined in Roseville's zoning ordinances, and thus Roseville had no basis upon which to deny the permit. *Id.* at 605-09. *Frank's Nursery Sales* was "government versus landowner" (Roseville versus Frank's Nursery Sales). This case is "landowner versus landowner" (the relators versus EOF), because LMCD granted the variance to EOF, which relators argue adversely affects them. And even if this case is viewed as "government versus landowner," the applicable landowners are the relators, who argue that they will suffer the negative implications of the government action, just as was argued in *Frank's Nursery Sales*. *Id*.

LMCD has made no attempt to argue that its grant of a variance would satisfy the undue hardship standard. But whether EOF's application for a variance satisfies this standard is a determination for LMCD in the first instance. Further findings of fact may be necessary. We thus reverse LMCD's grant of the variance and remand for consideration of EOF's variance request under the undue hardship standard.

**Affirmed in part, reversed in part, and remanded.**