*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1528**

David Bissen, et al.,
Appellants,

vs.

City of Crystal,
Respondent,

JUFH Enterprises LLC,
Respondent.

**Filed June 10, 2024
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CV-22-10572

Patrick B. Steinhoff, Thomas F. Devincke, Malkerson Gunn Martin LLP, Minneapolis, Minnesota (for appellants)

Paul Donald Reuvers, Andrew A. Wolf, Iverson Reuvers, Bloomington, Minnesota (for respondent City of Crystal)

David R. Mortensen, Kretsch Law Office PLLC, Lakeville, Minnesota; and

Jennifer Milchak, Lucere Legal, LLC, St. Louis Park, Minnesota (for respondent JUFH Enterprises LLC)

Considered and decided by Worke, Presiding Judge; Schmidt, Judge; and Harris, Judge.

**WORKE**, Judge

Appellants-property owners challenge the grant of summary judgment in favor of respondents on appellants' claims seeking to prevent respondent-developer's construction of a duplex adjacent to their property. We affirm.

**FACTS**

Appellants David Bissen and Kathy Bissen own a single-family home in respondent City of Crystal (the city). Respondent JUFH Enterprises LLC (the developer) owns property adjacent to the Bissens's property. The Bissens's property is to the east of the developer's property. There is another single-family home west of the developer's property. To the north of the developer's property is 36th Avenue North. And to the south of the property is a dead-end alley.

The properties are in the city's R1 zoning district. A single-family home on the developer's property was demolished in 2013. In 2021, the developer sought to subdivide the property into two platted lots named Crystal Flats. The developer submitted an application to the city, including plans to build two single-family homes on the property oriented toward the alley with no direct access to a public street. The home previously on the property had also had its primary access through the alley. The city approved the developer's application.

The Bissens sued the city and the developer to prevent the construction of Crystal Flats. In April 2022, the district court determined that the city's approval of the application

was unlawful because, among other things, Crystal Flats created lots with no direct access to a public street.

Neither the city nor the developer appealed the district court's decision. The developer abandoned its request to subdivide the property. The city filed a "Resolution Repealing Resolution Granting Preliminary and Final Plat Approval for the Plat of Crystal Flats." The city treated Crystal Flats as if it had never been approved or recorded. The Hennepin County Examiner of Titles issued and recorded an exchange certificate repealing Crystal Flats, and the developer's property reverted to its original description.

In June 2022, the developer applied for a building permit to build a duplex on the property. The city issued the building permit. The proposed duplex is oriented to reflect its primary access through the alley.

In July 2022, the Bissens, again, sued the city and the developer. The Bissens sought a declaratory judgment that the developer's property is not a buildable lot under the city's Unified Development Code (UDC),[1] and that buildings on the property are nonconforming and unlawful. The Bissens sought an injunction prohibiting the developer from using the alley as primary access to the property.

In April 2023, the parties filed cross-motions for summary judgment. Following a hearing, the district court granted summary judgment in favor of the city and the developer. The district court determined:

> Under the UDC's plain and unambiguous language, the [p]roperty is buildable. There is no dispute that a duplex is a permitted use in the R-1 Zoning District where the [p]roperty

---

[1] *See* Crystal, Minn., The Crystal city code, ch. 5 (2019).

is located. *See* UDC § 515.17, Table 3: Permitted Principal Uses. Moreover, the proposed duplex is compliant with all applicable performance standards. *See* UDC § 520.03. There is simply no provision in the applicable sections of the UDC that requires direct vehicular access from a public street, or that regulates building orientation.

The district court determined, alternatively, that the property was lawfully platted and existed at the time that the city adopted the UDC; thus, it would be buildable as a legal nonconformity. This appeal followed.

## DECISION

The Bissens argue that the district court erroneously granted summary judgment. "We review the grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law." *Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017) (quotation omitted). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted).

The Bissens argue that the property is neither a "lot of record" nor otherwise "buildable." The Bissens assert that, after the first lawsuit, the developer's property did not revert to its original description because the developer was required to proceed with an application pursuant to Minn. Stat. § 505.14 (2022) to have Crystal Flats vacated. Under that section, a landowner must apply to have the district court vacate a plat. Minn. Stat.

4

§ 505.14. The Bissens assert that, because the developer did not follow the statutory process to have the plat vacated, the plat recorded in the office of the recorder of Hennepin County is Crystal Flats, making it a nonbuildable lot of record.

The city and the developer assert that the first district court's order had the legal effect of vacating Crystal Flats. The district court determined that the city's approval of the plat application was unlawful. The city then rescinded its decision to approve Crystal Flats. The Hennepin County Examiner of Titles thereafter issued and recorded an Exchange Certificate reverting the property to its original description—"Lot 5, Block 2, Gardendale Acres, Hennepin County, Minnesota." As the developer notes, the statute does not contain exclusivity language. The developer did not lose its building rights because the city approved an unlawful subdivision of the property. When the city repealed Crystal Flats, the property reverted to its original description making it a buildable lot of record.[2]

The Bissens argue that even if the developer's lot is buildable, it cannot proceed with the duplex oriented toward the alley because the city ordinance requires lots to have principal access from a public street. The city argues that the Bissens rely on the inapplicable subdivision section of the UDC. *See* UDC § 525.

The interpretation of an ordinance is a question of law reviewed de novo. *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015). "A zoning ordinance should be construed according to its plain and ordinary meaning . . . ." *Yang v. County of Carver*,

---

[2] We note that the developer has since filed an application pursuant to Minn. Stat. § 505.14 to ensure that Crystal Flats is vacated.

660 N.W.2d 828, 832 (Minn. App. 2003) (citing *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608-09 (Minn. 1980)).

To resolve this matter, we focus on the plain language of the UDC. There is no dispute that the property is in the city's R-1 zoning district. UDC § 515.17, entitled Permitted principal uses, permits a duplex in an R-1 zoning district. UDC § 517.17, table 3. The UDC provides site-development standards for the R-1 zoning district. UDC § 515.05. The site-development standards for buildings regulate such things as residential density, setbacks, lot dimensions, maximum building size, and green space. UDC § 520.03, subd. 2. The Bissens do not argue that the proposed duplex is noncompliant with these provisions of the UDC.

The Bissens's complaint relates to the alley access. Under UDC § 505, subd. 90,

> [l]ot means land occupied or proposed to be occupied by a building and its accessory buildings, together with such open space as is required under the provisions of this UDC, having not less than the minimum area required by this UDC for a building site in the district in which such lot is situated and having its principal *frontage* on a street or a proposed street approved by the city council.

(Emphasis added.) "Frontage means the line of contact of a property with a public right-of-way." UDC § 505, subd. 71. And an "[a]lley" is "a public right-of-way other than a street that affords a secondary means of access to abutting property." UDC § 505, subd. 7.

The Bissens claim that the principal frontage cannot be an alley. Frontage was an issue in the first lawsuit because the developer attempted to subdivide the property. Subdivision of land is regulated under a different section of the UDC. *See* UDC § 525. This section creates new lots and is different than the sections of the UDC applicable here

6

which regulate the R-1 zoning district. Under the UDC sections applicable here, frontage is a line of contact with a public right-of-way and an alley is "a public right-of-way." *See* UDC § 505, subds. 7, 71. The Bissens seem to concede that there is no public-road-access requirement in the UDC for the R-1 zoning district, asserting rather, that the requirement is implicit. But under the plain language, there is no requirement that the building on the lot face a certain way. The developer and the city complied with the UDC. Under the plain language of the ordinance, the district court did not err by granting summary judgment.[3]

**Affirmed.**

---

[3] The district court determined that an alternative basis for granting summary judgment in favor of respondents was because the property is a legal nonconformity. Because we are affirming based on application of the plain language of the UDC, we need not review this alternative basis for relief.