Marlyn BUSS, Relator,

v.

Suzette JOHNSON, Respondent,

Blue Earth County Board
of Commissioners,
Respondent.

No. C2–00–1395.

Court of Appeals of Minnesota.

April 3, 2001.

William S. Partridge, Farrish Johnson Law Office, Mankato, MN, for relator.

Suzette E. Johnson, Johnson, Anderson & Zellmer, Mankato, MN, for respondent Suzette Johnson.

Jay T. Squires, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondent Blue Earth County Board of Commissioners.

Considered and decided by LANSING, Presiding Judge, ANDERSON, Judge, and HALBROOKS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Relator Marlyn Buss challenges the Blue Earth County Board of Commissioners' grant of a conditional use permit to respondent Suzette Johnson that allowed her to rebuild a destroyed, nonconforming horse barn. Relator argues that a county ordinance that permits the rebuilding of a destroyed nonconforming structure is invalid because it conflicts with Minn.Stat. § 394.36, subd. 1 (2000), which requires conforming use of the property following destruction of a nonconforming building. Relator further claims that, because the ordinance is invalid, the board of commissioners acted arbitrarily and unreasonably in granting the conditional use permit. Because the ordinance conflicts with the statute, we hold the ordinance invalid to the extent it permits restoration or repair of a nonconforming building that has been destroyed to the extent of 50% or more of its value. We further hold, however, that a reviewing authority, such as a board of commissioners, must consider the value of an entire integrated nonconforming use when determining the percentage of destruction of a nonconforming building within the meaning of Minn.Stat. § 394.36, subd. 1. Finally, because the conditional use permit in this case was a condition of a variance granting respondent relief from the restrictions of Minn.Stat. § 394.36, subd. 1, the board of commissioners' grant of the permit was neither arbitrary nor unreasonable.

## FACTS

Before 1983, respondent Suzette Johnson's property, which abuts Crystal Lake in Blue Earth County, was zoned R-1, Rural Residence. Blue Earth County ("County") categorized Crystal Lake as a "General Development" lake. On October

4, 1983, Blue Earth County rezoned the property ("Johnson Property") to A–2 Agricultural, and the County granted respondent a conditional use permit authorizing use of the Johnson Property as a commercial stable and riding academy for up to 100 horses.

In December 1991 the County, as part of a broader land use plan, adopted a shoreland ordinance that regulated land within approximately 1,000 feet of County lakes. In January 1994 the County adopted a livestock manure management ordinance that regulated animal feedlots. On May 13, 1996, the County's environmental-services office issued respondent a State of Minnesota Certificate of Compliance, allowing appellant to maintain barns and a feedlot for up to 65 horses. On May 14, 1996, the County issued respondent a corresponding feedlot permit. On June 8, 1996, the County adopted a general land use ordinance providing regulations and restrictions for various land use districts. At this point, the Johnson Property was a conforming use.

On February 22, 2000 the County adopted a new shoreland ordinance. Blue Earth County Shoreland Ordinance § 0110.0706, subps. 2(B)(1), (2) (2000) prohibited new feedlots in areas zoned as shoreland, and prohibited modifications or expansions to existing feedlots, but allowed the county board of commissioners to grant conditional use permits for feedlot modifications to mitigate existing pollution problems. The parties agree that, with the enactment of the February 22, 2000 shoreland ordinance, the Johnson Property feedlot became a permitted nonconforming use.

In April 2000, a fire destroyed one of three horse barns on the Johnson Property. Respondent submitted a timely application for a variance to reconstruct the destroyed barn. On June 7, 2000, the county board of adjustment conducted a public meeting to consider respondent's request for a variance. The board of adjustment reviewed relevant documents, county land use staff recommendations, and heard testimony from a number of interested county residents, including relator Marlyn Buss. The board of adjustment approved respondent's request for a variance, but made approval contingent on the issuance of a new conditional use permit authorizing reconstruction of the barn. The board of adjustment unanimously voted to recommend issuance of a conditional use permit with conditions recommended by county staff. The county planning commission voted to forward the request for a conditional use permit to the county board of commissioners.

The board of commissioners met on June 27, 2000 to consider the request for a conditional use permit. The board reviewed the recommendation of the planning commission, comments of county staff, and letters and testimony offered by Crystal Lake residents, including relator, respondent, and respondent's neighbors. The board also heard from the county attorney. The board unanimously voted to issue the conditional use permit to respondent, allowing her to reconstruct the barn.

By writ of certiorari, relator challenges the board of commissioners' grant of the conditional use permit.

## ISSUES

I. Does Minn.Stat. § 394.36, subd. 1 (2000) conflict with Blue Earth County Ordinance 0100.1405, subp. 7E (1996)?

II. Was the Blue Earth County Board of Commissioners' grant of a conditional use permit to rebuild a destroyed feedlot barn arbitrary and unreasonable?

III. Should documents not submitted to or considered by the Blue Earth County Board of Commissioners be stricken from the record?

## ANALYSIS

### I.

Relator first argues that an ordinance supporting the County's decision to

grant the conditional use permit, Blue Earth County Land Use Ordinance § 0100.1405, subp. 7E (1996), is invalid because it is in conflict with Minn.Stat. § 394.36, subd. 1 (2000). Interpretations of state statutes and existing local zoning ordinances are questions of law that this court reviews de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985) (statutes); *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980) (ordinances).

 Conflicts that would render an ordinance invalid exist only when the ordinance and the statute contain irreconcilable terms. *Mangold Midwest Co. v. Village of Richfield,* 274 Minn. 347, 352, 143 N.W.2d 813, 816 (1966). In determining whether an ordinance conflicts with a statute, we are guided by four principles:

(a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.

(b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids.

(c) Conversely, a conflict exists where the ordinance forbids what the statute expressly permits.

(d) It is generally said that no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute.

*Northern States Power Co. v. City of Granite Falls,* 463 N.W.2d 541, 544–45 (Minn.App.1990) (citations and quotations omitted), *review denied* (Minn. Jan. 14, 24, 1991).

Relator argues that the county ordinance is in conflict with state law because the ordinance allows the rebuilding of a nonconforming structure and continued nonconforming use of the property while Minn.Stat. § 394.36, subd. 1 does not.

Blue Earth County Land Use Ordinance 0100.1405, subp. 7E (1996) provides:

Subp. 7. Restoration and Repair. A non-conforming structure may be restored or repaired:

\* \* \* \*

E. When damaged or destroyed as the result of disaster upon the granting of a conditional use permit as regulated in Section 18 of this Ordinance.

Minnesota law, in the form of Minn.Stat. § 394.36, subd. 1, on the other hand, provides:

Nonconformities. Subdivision 1. Continuous or it ends. Any nonconformity including the lawful use or occupation of land or premises existing at the time of the adoption of an official control hereunder may be continued, except as regulated, terminated or acquired by the [municipality planning] board as provided in subdivisions 2 or 3, although such use or occupation does not conform to the provisions thereof, but if such nonconformity or occupancy is discontinued for a period of more than one year, or any nonconforming building or structure is destroyed by fire or other peril to the extent of 50 percent of its market value, any subsequent use or occupancy of the land or premises shall be a conforming use or occupancy.

*Id.*

Ordinance subpart 7E permits what Minn.Stat. § 394.36, subd. 1 prohibits; it provides that once a nonconforming structure is destroyed, it may be rebuilt—and the nonconforming use may continue—upon the granting of a conditional use permit, notwithstanding percentage of destruction. In contrast, Minn.Stat. § 394.36, subd. 1 requires that after a nonconforming building has been destroyed *to the extent of 50% of its market value,* subsequent use or occupancy of the land or premises shall be a conforming use. Because the ordinance permits what Minn.Stat. § 394.36, subd. 1 restricts, we hold the ordinance invalid to the extent it permits restoration or repair of a building

destroyed to an extent of 50% or more of its market value.

## II.

■ Relator next argues that the conflicts between Blue Earth County Land Use Ordinance 0100.1405, subp. 7E, Minn. Stat. § 394.36, subd. 1, and other county ordinances render the board of commissioners' decision to grant respondent a conditional use permit arbitrary and unreasonable. The Minnesota Supreme Court has repeatedly stated:

> [W]ith respect to the decisions of municipal and other governmental bodies having the duty of making decisions involving judgment and discretion that it is not the province of the court to substitute its judgment for that of the body making such a decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination.

*Village of Edina v. Joseph*, 264 Minn. 84, 93, 119 N.W.2d 809, 815 (1962) (citations omitted). Relator's argument requires us to interpret and apply Minn.Stat. § 394.36, subd. 1. Where facts are not disputed, application and interpretation of a statute presents us with a question of law that we review de novo. *Tousignant v. St. Louis County*, 615 N.W.2d 53, 58 (Minn.2000).

### A. Minn.Stat. § 394.36

■ Relator contends that Minn.Stat. § 394.36, subd. 1 is the controlling legislation and that the statute operates to prevent the County from granting respondent a conditional use permit to rebuild her barn. Respondent argues that the statute does not apply because the horse barn, before the fire, conformed to local zoning requirements, but the operation of the *feedlot* of which the barn was part was the nonconforming use. In other words, respondent draws a distinction between a nonconforming *building* and a nonconforming *use*, and contends that the barn was not a nonconforming building within the meaning of Minn.Stat. § 394.36, subd. 1.

But Blue Earth County Livestock Manure Management Ordinance 130.02, subd. 8(4) (1994) defines an animal feedlot, the nonconforming use, as "[a] lot or building, or combination of contiguous lots and buildings, intended for the confined feeding, breeding, raising, or holding of animals * * *." *Id.* Thus, the destroyed horse barn, although a building, is clearly a component of the larger nonconforming use. In addition, the record is replete with references to the horse barn as a nonconforming use and the board of commissioners treated the barn as a nonconforming building throughout the proceedings below. Accordingly, we reject respondent's argument that the barn was a conforming building.

Respondent also argues that, even if the horse barn is a nonconforming use within the meaning of Minn.Stat. § 394.36, subd. 1, it is part of an integrated nonconforming use that was not destroyed to the extent of 50% or more of its market value. This contention requires us to interpret Minn. Stat. § 394.36, subd. 1, which provides, in relevant part:

> [I]f such nonconformity or occupancy is discontinued for a period of more than one year, or any nonconforming building or structure is destroyed by fire or other peril to the extent of 50 percent of its market value, any subsequent use or occupancy of the land or premises shall be a conforming use or occupancy.

*Id.*

■ We first consider clauses of a statute together to give words their plain meaning. *American Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000); *see also* Minn.Stat. § 645.16, .17 (2000) (words given plain and ordinary meaning). If a statute is free from ambi-

guity, we look only at its plain language. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). A plain reading of the language in dispute dictates that once a nonconforming *building* is more than 50% destroyed, the future use to which it or the associated *land or premises* may be put "shall" be a conforming use. *See* Minn.Stat. § 645.44, subd. 16 (2000) ("shall" is mandatory). The statute makes no distinction between a building that is part of a larger conforming use and a building that is coextensive with the nonconforming use.

As the facts of this case illustrate, however, literal interpretation of the statute produces an absurd or unreasonable result: a building that is part of a larger nonconforming use, once destroyed, prevents subsequent nonconforming use of the entire property, even if the building was only a small fraction of the entire use and notwithstanding a county authority's willingness to grant a variance or a conditional use permit.

■ If the statute's literal meaning leads to "an absurd result that utterly · departs from the legislature's purpose, we may look beyond the language and examine other indicia of legislative intent." *Anker v. Little*, 541 N.W.2d 333, 336 (Minn.App.1995) (citations omitted), *review denied* (Minn. Feb. 9, 1996); *see also* Minn.Stat. § 645.17 (we presume that the legislature does not intend an absurd, impossible, or unreasonable result).

The purpose of Minn.Stat. § 394.36 is to reduce, through gradual elimination, the number of nonconforming uses. *Id.*, subd. 2. The Minnesota Supreme Court has recognized that the public policy behind the prohibition of nonconforming uses is to

> increase the likelihood that such uses will in time be eliminated due to obsolescence, exhaustion, or destruction. This in turn will lead to a uniform use of the land consistent with the overall comprehensive zoning plan.

*Freeborn County v. Claussen*, 295 Minn. 96, 99, 203 N.W.2d 323, 325 (1972). Minn. Stat. § 394.36, however, also recognizes the interests of property owners by providing that nonconforming uses may continue unless abandoned or destroyed to an extent of 50% of market value, and by providing for public acquisition, by board purchase, of nonconforming property. *Id.*, subds. 1, 3. Because one legislative purpose of Minn.Stat. § 394.36 is the protection of property owner interests, and a literal interpretation of Minn.Stat. § 394.36, subd. 1 departs from those interests, we look beyond the plain language of the statute to ascertain the legislature's intent.

In doing so, we may look to prior versions of a statute. Minn.Stat. § 645.16. A review of Minn.Stat. § 394.36, subd. 1 (1971), the predecessor to the current statute, shows that the legislature inserted "or any nonconforming building or structure is destroyed by fire or other peril to the extent of 50 percent of its market value" before the clause "any subsequent use or occupancy of the land or premises shall be a conforming use or occupancy." *Id.*; 1974 Minn. Laws ch. 571, §§ 41–43. Because we are to interpret the singular words "building or structure" to include the plural, we may conclude that the legislature intended the percentage of destruction to apply to multiple buildings constituting a nonconforming use, notwithstanding the legislature's use of the singular words followed by the preexisting clause "subsequent use or occupancy of the land or premises * * *." *See* Minn.Stat. § 645.08(2) (2000) (generally, singular includes the plural).

Other jurisdictions have recognized that, where a statute or ordinance permits restoration after destruction of a nonconforming building to a particular percent of market value, the *entire use*, including the building, should be considered. *See, e.g., Fayette County v. Seagraves*, 245 Ga. 196, 264 S.E.2d 13, 15 (1980) (holding value of mobile home included septic tank, well

pump, and utility connections); *Application of Richards,* 41 Misc.2d 850, 246 N.Y.S.2d 746, 749–50 (Sup.Ct.1962) (holding that, where one of seven buildings constituting a nonconforming migrant labor camp was destroyed, board of zoning appeals required to consider entire use for purposes of computing percentage of destruction); *see also* Kenneth H. Young, *Anderson's American Law of Zoning,* § 6.62 (4th ed.1996) (explaining that a consideration of the percentage of the value of a nonconforming building should involve an assessment of the entire nonconforming use as a whole).

This court has also recognized nonconforming uses as a whole. *Hertog v. Milwaukee Mut. Ins. Co.,* 415 N.W.2d 370 (Minn.App.1987), *review denied* (Minn. Jan. 20, 1988). In *Hertog,* an insurance-recovery action, a city ordinance regulated nonconforming uses destroyed to an extent over 75% of market value. *Id.* at 373–74. *Hertog* recognized that a floral business, the nonconforming use, constituted more than one structure for the purpose of ascertaining the percent of destruction. *Id.* Although *Hertog* did not apply Minn.Stat. § 394.36, subd. 1, we find *Hertog* persuasive and an aid to our interpretation of the statute.

A consideration of the market value of an entire nonconforming use comports with the legislature's goal of gradually reducing nonconforming uses while protecting interests of property owners, and has support in both Minnesota and foreign jurisdictions. Moreover, our interpretation of Minn.Stat. § 394.36, subd. 1's language ameliorates the absurd result that a strictly literal interpretation produces. Accordingly, we conclude that the legislature, in amending Minn.Stat. § 394.36, subd. 1, intended the percentage of destruction to be determined after a consideration of the entire market value of the nonconforming use of which a building is a part, not a consideration of the market value of the destroyed building alone. Because the board of commissioners did not determine,

and the record is not clear, that the nonconforming use was destroyed to an extent of 50% or more of its market value, we are unable to determine whether Minn.Stat. § 394.36, subd. 1 applies. Resolution of this question, however, is not necessary because our holding ultimately turns on the variance power of the board of adjustment.

## B. Grant of a Conditional Use Permit

■ Relator argues that, if Minn.Stat. § 394.36, subd. 1 applies to respondent's nonconforming barn, the county board of commissioners acted arbitrarily and unreasonably by granting respondent a conditional use permit. Respondent, citing *Appeal of Kenney,* 374 N.W.2d 271 (Minn. 1985), counters that municipalities may grant relief from state restrictions placed on nonconformities by the issuance of a variance.

In *Kenney,* a county board of adjustment denied a landowner's request for a variance to make improvements to a nonconforming boathouse. *Id.* at 272–73. The district court sustained the board's denial, ruling that the board was statutorily prohibited from granting the variance. *Id.* at 273. This court reversed, and that ruling was affirmed by the Minnesota Supreme Court, which held that the county board of adjustment had statutory authority to issue a variance from "official controls in general and from nonconformities in particular." *Id.* at 274. Respondent argues that in this case, the board of adjustment's variance power to depart from "any official control, including restrictions on nonconformities" such as Minn.Stat. § 394.36, subd. 1, allowed the county board of commissioners to issue a conditional use permit as part of a variance grant.

Variances, governed by Minn.Stat. § 394.27, subd. 7 (2000), may be granted by county boards of adjustment "when there are practical difficulties or particular hardship in the way of carrying out the strict letter of any official control * * *." *Id.* A board of adjustment, in its "exclu-

sive power" to grant variances, may "impose conditions in the granting of variances to insure compliance and to protect adjacent properties and the public interest." *Id.* As *Kenney* explains, the board of adjustment has the power to grant variances from *any official control. Kenney,* 374 N.W.2d at 274. An "official control" includes "legislatively defined and enacted policies * * * which control the development of a municipality or a county or any part thereof." Minn.Stat. § 394.22, subd. 6 (2000). Minn.Stat. § 394.36, subd. 1, which regulates the rebuilding of nonconforming buildings, is clearly a statutory official control. As an official control, a board of adjustment may, within its statutory power, grant a variance from the requirements of Minn.Stat. § 394.36, subd. 1.

Were we to conclude the board of commissioners in this case acted arbitrarily or unreasonably by disregarding Minn.Stat. § 394.36, subd. 1 in granting a conditional use permit, made a condition of granting the variance by the board of adjustment, we would effectively strip the board of adjustment of its "exclusive power" to grant conditional variances. That power includes granting variances from "restrictions placed on nonconformities." The attachment of conditions to a variance grant allows a board of adjustment to remedy or mitigate some of the potential harms of continuing a nonconforming use. *See* Minn.Stat. § 394.27, subd. 7 (stating purposes of imposing conditions are to "insure compliance and to protect adjacent property and the public interest"). Invalidating a board of commissioners' grant of a variance-based conditional use permit on the basis of a contrary official control undercuts the ability of the board of adjustment to grant a variance that protects both public and private interests.

Accordingly, we hold that, given the exclusive variance power of the board of adjustment to depart from the require-

ments of Minn.Stat. § 394.36, subd. 1, the board of commissioners did not act arbitrarily or unreasonably by disregarding the statute's limitations on nonconformities in reaching their decision to grant a conditional use permit. In so holding, however, we emphasize that we make no determination concerning the propriety of the variance grant in this case, which is properly on appeal to the district court.[1]

Relator also claims that the board of commissioners acted arbitrarily by relying on Blue Earth County Land Use Ordinance 0100.1405, subp. 7E because the ordinance is inconsistent with other county ordinances. Because we have determined that Blue Earth County Land Use Ordinance 0100.1405, subp. 7E is invalid to the extent it permits repair or restoration of nonconforming buildings destroyed to an extent of 50% or more of market value, we do not address this argument.

### III.

Finally, relator moves to strike several documents in the record assembled by the Blue Earth County Board of Commissioners. The "record" for judicial review must be confined to the record before the administrative body at the time it made its decision. *In re License No. 000337 West Side Pawn,* 587 N.W.2d 521, 523 (Minn.App.1998), *review denied* (Minn. Mar. 30, 1999). The record appears to contain a number of land use studies, meeting minutes, and other evidence of respondent's land-use history that were not submitted to or considered by the board of commissioners. We therefore grant relator's motion, but conclude that there is an adequate record to enable our review based on matters that were presented to the board.

### DECISION

Blue Earth County Land Use Ordinance 0100.1405, subp. 7E (1996) is invalid to the

---

1. The separate question of whether the variance was properly granted in this case is on appeal to the district court pursuant to Minn. Stat. § 394.27, subd. 9 (2000).

extent that it conflicts with Minn.Stat. § 394.36, subd. 1 (2000). A determination of whether a nonconforming building or structure that is part of a larger nonconforming use has been destroyed to an extent of 50% or more within the meaning of Minn.Stat. § 394.36, subd. 1 requires a consideration of the market value of the entire nonconforming use. The county board of commissioners did not act arbitrarily or unreasonably by granting respondent a conditional use permit because the permit was a condition of a variance granting respondent relief from the restrictions that Minn.Stat. § 394.36, subd. 1 places on nonconforming uses.

**Affirmed; motion granted.**