In the Matter of the DENIAL OF CERTIFICATION OF the VARIANCE GRANTED TO David HASLUND by the CITY OF ST. MARY'S POINT.

No. A08–0427.

Court of Appeals of Minnesota.

Jan. 27, 2009.

Bradley J. Gunn, Malkerson, Gilliland & Martin, L.L.P., Minneapolis, MN for relator David Haslund.

Lori Swanson, Attorney General, David P. Iverson, Kimberly J. Middendorf, Assistant Attorneys General, St. Paul, MN for respondent Commissioner of Natural Resources.

Considered and decided by SCHELLHAS, Presiding Judge; JOHNSON, Judge; and CRIPPEN, Judge.*

OPINION

SCHELLHAS, Judge.

Relator challenges respondent's refusal to certify a city's decision to allow relator to develop a parcel of land. We conclude that (1) the terms of the city's zoning

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

ordinances fail to comply with DNR's minimum standards adopted under the Lower St. Croix Wild and Scenic River Act (Lower St. Croix Act), (2) DNR's minimum standards require relator to obtain a variance from the city to develop an unplatted lot, (3) the variance is subject to certification by respondent, and (4) even though respondent certified the city's zoning ordinances as being "in substantial compliance" with DNR's standards, respondent is not estopped from denying certification of the city's variance. Therefore, we affirm.

## FACTS

Relator David Haslund appeals DNR's refusal to certify a variance that was granted by the City of Saint Mary's Point to allow relator to construct a residence on his land. At issue in this case are two adjacent lots, 2959 Itasca Avenue South (Lot A), and 2969 Itasca Avenue South (Lot B), which contains a residence. Both lots are subject to a bluffland/shoreland management ordinance (BSM ordinance), which the city enacted pursuant to the Lower St. Croix Act. St. Mary's Point, Minn., Lower St. Croix River Bluffland and Shoreland Management Ordinance (1978). Neither lot is platted or meets the minimum dimensional standards established in BSM ordinance section 402.01, which require that developable lots be 150 feet wide at the waterline. Only the combined dimensions of Lots A and B would satisfy the dimensional requirements of section 402.01.

Lots A and B were separately owned until 1974, when Gloria Haslund obtained title to both lots. In 1986, Gloria Haslund sold Lot B, the developed lot, to relator. In 2000, she deeded Lot A, the undeveloped lot, to relator, restoring common ownership of the lots. Relator does not dispute that Lots A and B have been under common ownership at various times since May 1, 1974.

DNR's rules promulgated under the Lower St. Croix Act provide that a substandard lot that has been under common ownership with an adjacent lot at any point since May 1, 1974, cannot be separately developed. Minn. R. 6105.0380, subp. 2 (2005). Section 602.02 of the BSM ordinance applies to substandard lots, but the wording is different from the DNR rule. Section 602.02 states that a substandard lot within a group of "contiguous platted lots under a single ownership" cannot be separately developed.

In 2000, relator applied for a variance to build a house on Lot A. In his application, relator stated only that "this property has always existed as a separate parcel that was buildable until recent change. Property lot width at waterline is 115 feet and at building setback line from water is 107.5 feet." Relator did not mention section 602.02 or disclose that Lots A and B had been under his common ownership. The city's mayor contacted DNR representative Molly Shodeen by telephone to discuss relator's request. Respondent Commissioner of Natural Resources claims that when speaking with the mayor, Shodeen had no documents before her regarding relator's variance request and no knowledge that relator owned both Lots A and B and only spoke informally about DNR's requirements. Based upon her belief that relator's request was limited to a variance of the dimensional standards of section 402.01, Shodeen told the mayor that she did not believe DNR certification of a variance was required to develop Lot A, because the proposed residence met all requirements.

In June 2000, the city granted relator a variance to build a house on Lot A, but did not forward its decision to respondent for certification as required by BSM ordinance

section 802.01.[1] The variance had a two-year time limit and expired in 2002, by which time relator had not started building the house. In September 2004, relator obtained a permit to install a septic system on Lot A. In November 2004, he sold Lot B to a third party.

In August 2006, relator again applied for a variance to build a house on Lot A. In his application, relator sought a variance to "build on a non-conforming lot size under current ordinance" and "to properly document and certify with the DNR the variance granted in June 2000." Again, relator did not disclose that he had previously owned both Lots A and B. After relator submitted this variance application, Shodeen learned that Lots A and B had been under common ownership at various times since May 1, 1974.

In October 2006, the city held a special city council meeting in which relator asked the city to "clarify" its 2000 decision granting him a variance. The city council voted 5–0 to "certify the original variance from the June 2000 meeting and refer it to the DNR for their comments on the action." The city council also voted 3–2 that "the original variance granted in June of 2000 was only as to lot size and width, and the Council extend[ed] the original time line for construction," provided construction began by April 1, 2007. The city then informed DNR that the 2000 variance had not been submitted for DNR certification and asked DNR to certify its decision to extend the 2000 variance. The city received a written response from DNR that DNR's rules pursuant to the Lower St. Croix Act do not require separate variances for lot size and width, but that section 602.02 prohibits the development of adjacent substandard lots under common ownership and that no variance to section 602.02 was granted by the city or certified by DNR. The city responded by letter to DNR that states in part:

> The May 2, 2000 and June 6, 2000 City Council minutes clearly reflect that the property owner had come to the City requesting a variance to build on two (2) adjacent substandard lots.... It is the current Council's conclusion that the previous Council was aware of this issue and intended to grant a variance to City of St. Mary's Point Ordinance 602.02.
>
> The City is herewith certifying completion of variances to lot size, lot width, and to City Ordinance 602.02 to your offices pursuant to the Bluffland/Shoreland management ordinance. I will await a response from you within the next thirty (30) days or otherwise assume that action can stand as certified if there is not a[d]verse comment from the DNR.

DNR responded that there was no evidence that the common-ownership issue had been discussed at the June 2000 city council meeting or that the final decision from that meeting had been sent to DNR, noting that it would likely have been precluded from certifying a variance from section 602.02, had the city granted one. In a subsequent letter to DNR, the city's mayor expressed that "the city remains supportive of [relator's] request related to this property."

Relator appealed respondent's refusal to certify the city's decision to an administrative-law judge (ALJ), arguing that section 602.02 applied to platted lots only and therefore did not apply to Lot A. Both parties moved for summary disposition.

---

1. Section 802.01 provides that "[b]efore any ... variance becomes final, the governing body shall forward the decision to the Commissioner. The Commissioner of Natural Resources shall certify in writing that the proposed action complies with the intent of the Wild and Scenic Rivers Acts and the Master Plan for the Lower St. Croix River."

Because no issues of fact were in dispute, the ALJ issued findings of fact, conclusions, and a recommendation without conducting an evidentiary hearing. The ALJ found that Lots A and B are subject to the Lower St. Croix Act, DNR's rules pursuant to that act, and the BSM ordinance. The ALJ also found that in 2000, when Shodeen expressed her viewpoint that DNR certification of the variance was not required, she was unaware that Lots A and B had been under common ownership and had only spoken informally. The ALJ rejected relator's argument that section 602.02 applied only to platted lots, not unplatted lots, because the argument impermissibly placed "the local ordinance ... at the top of the proverbial legal pyramid," whereas "local zoning powers ... are preempted in favor of state regulation" in the Lower St. Croix area under Minn.Stat. § 103F.351, subd. 4, (2006); and relator gave no policy reason why section 602.02 should not apply to unplatted lots.

Respondent adopted the ALJ's findings of fact and conclusions with modifications and accepted the ALJ's recommendation, denying certification of the variance granted to relator to build a house on Lot A. In making the final decision, respondent determined that respondent's certification of the city's ordinance only meant that the ordinance was "largely compliant, and in no way restricts the Department's ability to certify or withhold certification of local decisions." Relator appeals from respondent's decision.

## ISSUES

I. When a zoning ordinance enacted under the Lower St. Croix Act refers only to platted lots, must a landowner obtain a variance to develop an unplatted lot?

II. When DNR certifies a city's ordinance as being substantially compliant with DNR's rules under the Lower St. Croix Act, is DNR estopped from arguing that the ordinance does not meet DNR's minimum standards?

## ANALYSIS

 The decision of an agency is presumed to be correct, and we ordinarily accord deference to an agency in its field of expertise. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). Review of an agency's decision is narrow in scope, and a reviewing court may not substitute its views for those of the agency. *Town of Forest Lake v. Minn. Mun. Bd.*, 497 N.W.2d 289, 291 (Minn.App.1993), *review denied* (Minn. Apr. 29, 1993). We review the agency's findings in the light most favorable to its decision and will not disturb these findings if there is evidence that would reasonably sustain them. *McGowan v. Ex. Exp. Transp. Enter., Inc.*, 420 N.W.2d 592, 594 (Minn.1988). "We may reverse or modify an agency's decision only if it is in violation of a constitutional provision, in excess of the agency's statutory authority or jurisdiction, made upon unlawful procedure, affected by other error of law, unsupported by substantial evidence, or arbitrary and capricious." *Bloomquist v. Comm'r of Natural Resources*, 704 N.W.2d 184, 187 (Minn.App. 2005) (citing Minn.Stat. § 14.69 (2004)). Whether an agency's decision exceeds its statutory authority is subject to de novo review. *St. Otto's Home v. Minn. Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). A relator has the burden of proving that an agency exceeded its statutory authority. *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn.1996).

## I.

The Lower St. Croix River, which Lots A and B abut, was nominated for inclusion

in the National Wild and Scenic Rivers System in 1972, contingent upon the development of a "comprehensive master plan" by the states of Minnesota and Wisconsin that would "provide for State administration of the lower twenty-five miles of the Lower St. Croix River segment." Pub.L. No. 92–560, 86 Stat. 1174 (1972). In 1973, the Minnesota legislature adopted the Lower St. Croix Act, which directed DNR to develop a master plan relating to "boundaries, classification, and development" of the area and to adopt rules establishing minimum guidelines and standards for local zoning ordinances applicable to real property along the river. 1973 Minn. Laws ch. 271, at 480–82. The Lower St. Croix Act also required local governmental units to "adopt zoning ordinances complying with the guidelines and standards." *Id.* This act is now codified as Minn.Stat. § 103F.351 (2006).

DNR promulgated Minn. R. 6105.0351–.0550 (2005) to establish guidelines and standards for zoning ordinances in the Lower St. Croix area. *See* Minn. R. 6105.0351–52 (stating that the purpose of rules 6105.0351–.0550 is to establish minimum statewide standards for the protection of the Lower St Croix River pursuant to Minn.Stat. § 103F.351, subds. 3–5). These rules provide that "to ensure that the standards and criteria herein are not nullified by unjustified exceptions in particular cases, and to promote uniformity in the treatment of applications for such exceptions," the Commissioner of Natural Resources reviews and certifies (1) local governmental unit ordinances and (2) variances from ordinances that relate to "the dimensional standards and criteria of part 6105.0380." Minn. R. 6105.0540, subp. 1. These rules further provide that local governmental units are allowed to deviate from these standards only by enacting provisions more restrictive than these standards. Minn. R. 6105.0352, subp. 2.

Rule 6105.0380, subpart 2, provides that:

Lots recorded in the office of the county register of deeds prior to May 1, 1974, that do not meet the requirements of subpart 3, may be allowed as building sites when:

A. the proposed use is permitted in the zoning district;

B. the lot has been in separate ownership from abutting lands since May 1, 1974;

C. it can be demonstrated that a proper and adequate sewage disposal system can be installed in accordance with the provisions of part 6105.0390, subpart 3; and

D. the dimensional standards of a Saint Croix Riverway ordinance are complied with to the greatest extent practicable. A Saint Croix Riverway ordinance may, consistent with these standards and criteria, set a minimum size for substandard lots or impose other restrictions on the development of substandard lots.

Section 602.02 of the city's BSM ordinance, however, provides that:

If, in a group of contiguous *platted* lots under a single ownership, any individual lot does not meet the minimum requirements of this Ordinance, such individual lot cannot be considered as a separate parcel of land for purposes of sale or development, but must be combined with adjacent lots under the same ownership, so that the combination of lots will equal one (1) or more parcels of land each meeting the full minimum requirements of this Ordinance.

St. Mary's Point, Minn., Lower St. Croix River Bluffland and Shoreland Management Ordinance § 602.02 (1978) (emphasis added). Relator argues that because sec-

tion 602.02 expressly provides that it applies to platted lots, he is not required to obtain a variance from section 602.02 in order to build on Lot A because Lot A is not platted. Therefore, relator argues, DNR certification of a variance to the lots-in-common provision of section 602.02 is not required in his case.

■■■ Three rules of construction guide a court's interpretation of an ordinance: terms are given their plain and ordinary meaning; "zoning ordinances should be construed strictly against [a] city and in favor of [a] property owner"; and "zoning ordinance[s] must always be considered in light of [their] underlying policy [goals]." *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608–09 (Minn. 1980); *see also Smith v. Barry*, 219 Minn. 182, 187, 17 N.W.2d 324, 327 (1944) ("[R]ules that govern the construction of statutes are applicable to the construction of ordinances."). But we will not disregard the unambiguous letter of the law "under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2008).

■■■ We agree with relator that by its plain terms, section 602.02 applies to platted lots only, and, accordingly, does not apply to unplatted Lot A. But section 602.02 therefore does not comply with the minimum standards set by rule 6105.0380, subp. 2, which prohibits the development of substandard lots-in-common, without distinguishing between platted and unplatted lots. Section 602.02 also fails to comply with Minn.Stat. § 103F.351, subd. 4(c), which requires cities, counties, and towns to enact zoning ordinances complying with DNR's rules. DNR's rules permit municipalities to vary from the rules only by "applying other existing rules or ordinances which are more protective than" the rules. Minn. R. 6105.0352, subp. 2. "It is elementary that an ordinance must not be repugnant to, but in harmony with, the laws enacted by the Legislature for the government of the state." *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 350, 143 N.W.2d 813, 816 (1966) (quotation omitted).

■■■ A municipality cannot enact local regulations that conflict with state law. *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 6 (Minn.2008); *see also* Minn. Stat. § 14.38, subd. 1 (2006) (providing that an agency's rules "have the force and effect of law"). To determine whether an ordinance conflicts with a statute, we are guided by four general principles:

> (a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.
>
> (b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids.
>
> (c) Conversely, a conflict exists where the ordinance forbids what the statute *expressly* permits. . . .
>
> (d) It is generally said that no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute.

*Mangold*, 274 Minn. at 352, 143 N.W.2d at 816–17 (citations omitted); *see also Board of Supervisors v. ValAdCo*, 504 N.W.2d 267, 272 (Minn.App.1993) (applying *Mangold* to determine that an ordinance was preempted by and in conflict with state law), *review denied* (Minn. Sept. 30, 1993).

■■■ Here, section 602.02 implicitly allows the development of substandard lots-in-common as long as they are unplatted; thus, section 602.02 is irreconcilable with rule 6105.0380, subp. 2, which prohibits development on all substandard lots-in-common. "[W]hen an ordinance conflicts with a well-established law of the state the

ordinance must yield and the statute prevail." *City of Duluth v. Cerveny*, 218 Minn. 511, 520, 16 N.W.2d 779, 784 (1944). Because section 602.02 permits what rule 6105.0380, subp. 2, forbids, thereby violating Minn.Stat. § 103F.351, subd. 4(c), we hold section 602.02 invalid to the extent that it permits the development of a substandard lot that is adjacent to another lot that was under common ownership after May 1, 1974, without a variance. *See Buss v. Johnson*, 624 N.W.2d 781, 784–85 (Minn. App.2001) (holding an ordinance invalid to the extent that it permits what a statute restricts). We conclude that section 602.02 must be read to include the lots-in-common provision of rule 6105.0380, subp. 2. Therefore, relator was required to obtain a variance from the ordinance to develop unplatted Lot A.

Relator argues that respondent lacks the statutory authority under the Lower St. Croix Act to independently review a city's land-use decisions. Because we have concluded that relator was required to obtain a variance before building on Lot A, we further conclude that this variance would have been subject to DNR certification under section 802.01, which provides that "[b]efore any zoning district or ordinance amendment or variance becomes final, the governing body shall forward the decision to the Commissioner" for certification. St. Mary's Point, Minn., Lower St. Croix River Bluffland and Shoreland Management Ordinance § 802.01 (1978). Therefore, we need not consider relator's argument that DNR lacked the authority to review the city's decision to allow him to develop Lot A.

## II.

▆▆▆▆ Relator also argues that because respondent has already certified the city's BSM ordinance, it "cannot now renege on its previous certification of the

language" of section 602.02. In making this argument, relator invokes the doctrine of equitable estoppel under which an entity such as a government agency is prevented from asserting a set of facts different from a specific and authoritative representation that it makes to another entity that reasonably relied on that representation. *Halverson v. Village of Deerwood*, 322 N.W.2d 761, 767 (Minn.1982). The doctrine of equitable estoppel is applicable when a property owner (1) relying in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired. *Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 292 (Minn.1980). Moreover, the party attempting to apply estoppel must show that his reliance on the representation was reasonable. *Id.*

▆▆▆▆ Relator argues that he relied on respondent's certification of the city's BSM ordinance as being "in substantial compliance" with DNR's rules. Therefore, relator argues, respondent is estopped from arguing that section 602.02 is not compliant with DNR's rules. "Substantial" means "considerable in importance, value, degree, amount, or extent." *The American Heritage Dictionary* 1727 (4th ed.2006). Respondent's certification of the city's BSM ordinance as being "in substantial compliance" with DNR rules was a representation that the BSM ordinance complied with DNR's rules to a considerable extent, and not a representation that the city's BSM ordinance was wholly in compliance with DNR's rules or that any land-use decision made by the city under the BSM ordinance would necessarily comply with those rules. To the extent that relator relied on respondent's certification of the city's BSM ordinance to his detri-

ment, he has not shown that this reliance was reasonable, particularly where his property fit within the discrepancy between the ordinance and relevant rule. Therefore, we reject relator's estoppel argument.

## DECISION

Because the city's BSM ordinance section 602.02 allows the development of unplatted substandard lots adjacent to and under common ownership with other lots, section 602.02 conflicts with DNR's rules under the Lower St. Croix Act and fails to comply with Minn.Stat. § 103F.351, subd. 4(c), which requires cities to enact zoning ordinances consistent with DNR's rules under the act. We therefore apply DNR's rules and conclude that relator is required to obtain a variance from section 602.02, prior to building on Lot A. Because section 802.01 requires respondent's certification of the variance decision, we further conclude that respondent was authorized to refuse to certify the city's decision to grant relator a variance.

**Affirmed.**